Filed 8/19/22 Isenberg v. Dept. of Motor Vehicles CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SYDNEY ISENBERG, | F082435 |
| Plaintiff and Respondent, | (Super. Ct. No. BCV-19-102746) |
| v. | |
| DEPARTMENT OF MOTOR VEHICLES, | **ORDER MODIFYING OPINION AND DENYING REQUEST FOR PUBLICATION** [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

**THE COURT:**

It is hereby ordered that the nonpublished majority opinion filed on July 22, 2022, be modified as follows:

On page 20, the text of footnote 7 is deleted in its entirety and the following text is inserted in its place:

> APS hearings and the hearing officer's decision must comply with Vehicle Code sections 14100 through 14106. Pursuant to Vehicle Code section 14112, subdivision (a), all matters not covered by those sections shall be governed, as far as applicable, by chapter 5 (Gov. Code, §§ 11500–11529) of California's Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.). In turn, Government Code section 11501, subdivision (c) states that chapter 4.5 of the APA "applies to an adjudicative proceeding required to be conducted under this chapter, unless the statutes relating to the proceeding provide otherwise." Based on the foregoing provisions, Isenberg contends the hearing officer's decision is subject to Government Code section 11425.50, which requires decisions to be in writing, requires a

statement of the factual and legal basis for the decision, and imposes other requirements for the contents of the decision. We do not resolve whether Government Code section 11425.50 applies to a hearing officer's decision because the parties' briefing did not address the specific issue of whether the requirements for a hearing officer's decision constitute "matters in a hearing not covered by [Vehicle Code section 14105]" for purposes of Vehicle Code section 14112, subdivision (a).

There is no change in judgment.

The request for publication of the opinion filed in the above entitled matter on August 11, 2022, is hereby denied. Part I of the opinion applies existing principles governing mootness and the impact of interim relief to the question of whether a plaintiff is a prevailing party. Part II of the opinion applies principles established by the Supreme Court in *Coffey v. Shiomoto* (2015) 60 Cal.4th 1198.

In compliance with California Rules of Court, rule 8.1120(b), the Clerk/Executive Officer of this court shall transmit copies of the request for publication, the opinion, and this order to the Supreme Court.

FRANSON, J.

I CONCUR:

SMITH, J.

I concur in the denial of the request for publication, but do not otherwise adopt the rationale expressed herein as set forth in my dissent.

POOCHIGIAN, ACTING P. J.

2.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SYDNEY ISENBERG,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DEPARTMENT OF MOTOR VEHICLES,<br><br>    Defendant and Appellant. | F082435<br><br>(Super. Ct. No. BCV-19-102746)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Eric Bradshaw, Judge.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Kenneth C. Jones and Anthony William Gomez, Deputy Attorneys General, for Defendant and Appellant.

Middlebrook & Associates, Richard O. Middlebrook, Gabrielle A. LaCarre and Misty B. Franklin for Plaintiff and Respondent.

-ooOoo-

The Department of Motor Vehicles (DMV) appeals an award of attorney fees in the amount of $3,640 to plaintiff Sydney Isenberg. The superior court made the award pursuant to Government Code section 800 (section 800) after determining (1) Isenberg was the prevailing party in her civil writ proceeding challenging the suspension of her driver's license and (2) the DMV's conduct was arbitrary or capricious. On appeal, the DMV contends it, not Isenberg, was the prevailing party because Isenberg's petition for writ of mandate was dismissed as moot after an acquittal in her criminal case and, moreover, it acted reasonably, not arbitrarily or capriciously.

First, the superior court did not abuse its discretion when it determined Isenberg was the prevailing party because Isenberg achieved her litigation objective of preventing the suspension of her driver's license. Shortly after Isenberg filed this writ proceeding, the superior court granted her request for a stay of the DMV's suspension order pending the outcome of the case. Without the stay, the four-month suspension would have taken effect and expired before she was acquitted in her criminal case and the DMV, as required by statute, set aside its suspension order. Thus, the superior court reasonably could find Isenberg prevailed by obtaining a result that she would not have achieved without filing the writ petition.

Second, the superior court did not abuse its discretion when it determined the DMV acted arbitrarily by failing to follow the principles established by our Supreme Court in *Coffey v. Shiomoto* (2015) 60 Cal.4th 1198 (*Coffey*). Initially, the hearing officer unreasonably concluded the testimony of Isenberg's expert did not rebut the presumption about blood-alcohol content (BAC) set forth in Vehicle Code section 23152, subdivision (b) and, furthermore, relied in part on that presumption to find Isenberg's BAC was at least 0.08 percent at the time she was driving. This was not an isolated error. The DMV's stubborn refusal to accept and apply the principles in *Coffey* that define when expert testimony is sufficient to rebut the presumption is reflected in the superior court proceedings where the DMV, in conflict with *Coffey*, insisted that Isenberg's expert

2.

had not rebutted the presumption and, moreover, that it appropriately relied on the presumption to uphold the license suspension. This arbitrary failure to properly apply *Coffey* adequately supports the award of attorney fees under section 800.[1]

We therefore affirm the judgment.

## FACTS

On August 5, 2018, at approximately 1:35 a.m., California Highway Patrol Officers Martinez and Tait saw a black sport utility vehicle weave to the left on two separate occasions and tailgate a pickup truck. The officers pulled the vehicle over and officer Martinez spoke with the driver, Isenberg, through her side window. Isenberg told him that she had two, 25 ounce El Cerrito beers at the "BLVD." Isenberg's speech was normal and she was cooperative. Officer Martinez notice a strong smell of alcohol and observed her eyes were red and watery. Officer Martinez requested Isenberg perform some balance and coordination tests. Isenberg did not adequately perform the field sobriety tests. Next, Officer Martinez administered preliminary alcohol screening (PAS) tests that took samples of Isenberg's breath to determine her BAC. The results were 0.091 percent BAC at 1:51 a.m. and 0.097 percent BAC at 1:54 a.m.

Officer Martinez formed the opinion that Isenberg had been driving under the influence of alcohol and placed her under arrest for violating Vehicle Code section 23152, subdivision (a). Isenberg was asked if she wanted to do a blood screening or a breathalyzer and she chose the breathalyzer. The test taken at 2:15 a.m. showed her BAC at 0.100 percent and the test taken at 2:17 a.m. showed her BAC at 0.101 percent. These tests were done with the same breathalyzer machine as the PAS tests. Isenberg was

---

**1** As described below, any errors in the superior court's decision about the hearing officer presuming Isenberg had the burden of proof or about the sufficiency of the circumstantial evidence to support a finding that her BAC was at least 0.08 percent when she drove were harmless. As a result, those errors do not warrant a reversal and remand for the superior court to reevaluate whether the DMV's conduct was arbitrary.

3.

advised that her breath samples would not be retained for later analysis and, if she chose, she could provide a blood or urine sample that would be retained. Isenberg declined further testing and the officers took her to the Kern County Central Receiving Jail and she was booked at approximately 2:32 a.m.

Vehicle Code section 13353.2, subdivision (a)(1) requires the DMV to suspend the driver's license of a person who drove with a BAC of .08 percent or more. Accordingly, "[w]hen a driver is arrested for driving under the influence and is determined to have a prohibited [BAC], the arresting officer or the DMV serves the driver with a 'notice of [an] order of suspension or revocation' of his or her driver's license, advising that the suspension will become effective 30 days from the date of service. (Veh. Code, §§ 13353.2, subds. (b) & (c); 13353.3, subd. (a).)" (*Brown v. Valverde* (2010) 183 Cal.App.4th 1531, 1536–1537.) The notice explains the driver's right to an administrative per se (APS) hearing[2] before the suspension takes effect. (*Id*. at p. 1537.) A driver must request the APS hearing within 10 days of receipt of the notice. (*Ibid*.)

The day after Isenberg's arrest, her attorney sent the DMV a letter requesting an APS hearing. The letter confirmed that the DMV would stay the suspension of Isenberg's driver's license pending the outcome of the administrative hearing.

In September 2018, criminal charges were filed against Isenberg. Count 1 alleged driving under the influence of alcohol in violation of Vehicle Code section 23152, subdivision (a). Count 2 alleged driving with a BAC of 0.08 percent or more. Also in September 2018, the DMV stayed the suspension of Isenberg's license pending the outcome of the APS Hearing.

---

[2] The procedure involving the immediate suspension of the driver's license of a person who drove with a BAC of .08 percent or more "is called 'administrative per se' because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration." (*MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 155; see Veh. Code, § 13353.2, subd. (a)(1).)

A DMV driver safety officer conducted the APS hearing over two days—January 30, 2019, and August 23, 2019. In between these two hearing dates, Isenberg was acquitted on count 1, driving under the influence of alcohol, but the jury was unable to reach a verdict on count 2.

At the January 30, 2019 APS hearing, Isenberg's expert witness, Stanley D. Dorrance, testified. From 1972 to 1982, Dorrance was employed by the California Department of Justice, Bureau of Forensic Services as a Criminalist III and part of his duties involved the analysis of blood, breath and urine for alcohol. While at the department, he testified about alcohol approximately 500 times. In 1982, Dorrance left the department and became self-employed as the founder of Forensic Science Services. Since that time, he has testified approximately 3,000 times regarding alcohol.

Dorrance provided expert testimony to support Isenberg's rising blood alcohol defense.[3] Dorrance stated his opinions were based on the sworn statement and arrest report (which included a description of the field sobriety tests and PAS test), Isenberg's testimony, assumptions made about her drinking pattern, and his review of the medical literature. Based on his assumptions, Dorrance calculated that, when Isenberg was stopped by the officers, her BAC was probably 0.06 percent and may have been as high as 0.07 percent.

On the second day of the APS hearing six months later, Ivette Ruvalcaba, the DMV's rebuttal expert, testified. Based on information about Isenberg's drinking that evening and her weight and sex, Ruvalcaba performed calculations for a retrograde

---

**3**    In *People v. Beltran* (2007) 157 Cal.App.4th 235, the First District referred to the circumstances before it as "a classic example of the well-recognized defense in DUI cases known as the 'rising blood-alcohol' defense. (*Helmandollar v. Department of Motor Vehicles* (1992) 7 Cal.App.4th 52, 55; Taylor, California Drunk Driving Defense (3d ed. 2001) Forensic Chemist: Blood-Alcohol, § 11.1.1, pp. 610–611.)" (*Id.* at p. 246.)

extrapolation that projected a wide range of possible BAC levels (0.05 percent to 0.13 percent) at the time Isenberg drove and was pulled over. Ruvalcaba never offered her opinion as to the specific BAC at the time of Isenberg's driving.

*Hearing Officer's Findings and Decision*

On August 28, 2019, five days after the APS hearing concluded, the DMV's hearing officer issued findings and a decision regarding the suspension of Isenberg's driver's license. The hearing officer determined the officers had probable cause for stopping Isenberg's vehicle; the arresting officer had reasonable cause to believe Isenberg had been driving while under the influence of alcohol; and Isenberg was lawfully arrested for driving under the influence.

Part V of the hearing officer's decision was titled "Chemical Test" and stated in full: "[B]ased on the lack of sufficient evidence to rebut the chemical test results, it is hereby determined that [Isenberg] submitted to and completed a chemical test of her breath, with results of 0.10% B.A.C. at 02:15 AM on 8/5/18 and 0.10% B.A.C. at 02:17 AM on 8/5/18." Part VI of the decision was titled "Other Findings" and discussed the testimony of each side's expert and that of Isenberg. The single sentence in Part VII of the decision stated: "*Based on the preceding* it is determined that the preponderance of the evidence in this case supports that [Isenberg] was driving a motor vehicle at the time that the concentration of alcohol in her blood was at or above 0.08%." (Italics added.)

**PROCEEDINGS**

On September 26, 2019, Isenberg filed a petition for writ of mandate that included a request for a stay of the suspension of her driver's license pending adjudication of her writ petition. The petition's prayer for relief sought a writ of mandate directing the DMV to revoke its August 28, 2019 suspension order. On October 3, 2019, the superior court granted the stay.

On January 21, 2020, Isenberg filed her opening brief, which included a request for costs and attorney fees pursuant to section 800. On January 27, 2020, Isenberg was

acquitted on count 2, driving with a blood-alcohol level of 0.08 percent or more. As a result of the acquittal, the DMV vacated the suspension order on February 12, 2020.

Later that February, the DMV filed an opposition asserting that the petition was moot because it had vacated the suspension order as required by Vehicle Code section 13351 once it learned of Isenberg's acquittal. The DMV appears to have anticipated that Isenberg's request for attorney fees would not be rendered moot and, as a result, the opposition argued the DMV properly considered all the testimony and documentary evidence and acted in good faith in upholding the license suspension. The DMV asserted Isenberg's "central argument is based on opinion testimony from expert witness Stanley Dorrance of a rising blood alcohol defense to rebut the presumption that she was driving with a 0.08% BAC." The DMV then argued it had made the preliminary showing necessary for the application of the presumption and, therefore, Isenberg's "expert witness testimony had to amount to substantial evidence to rebut it."[4] The DMV then argued Isenberg's "speculative and conclusory expert testimony regarding rising blood alcohol level did not amount to substantial evidence" and the legislative intent underlying the presumption in Vehicle Code section 23152, subdivision (b) "indicates that a driver may not rebut it utilizing the suspect and discounted theory of rising blood alcohol level." Citing *People v. Thompson* (2006) 38 Cal.4th 811—a case decided nine years before *Coffey*—the DMV incorrectly argued the Supreme Court had rejected the argument that an expert could testify about a driver's BAC at an earlier point and asserted Isenberg's expert "attempted to extrapolate backward from later-taken BAC results to hypothesize as to her BAC at the time she was driving." After briefly describing the opinion testimony of Dorrance and Ruvalcaba, the DMV stated the "competing opinions illustrate the danger in trying to rely in retrograde extrapolation, and confirm the basis for the

---

[4] We, like the trial court, agree with this argument and, therefore, conclude Isenberg had the burden of producing evidence sufficient to rebut the presumption.

Legislature's enactment of the three-hour presumption, cited above." After setting forth some principles governing expert testimony, the DMV concluded that it "reasonabl[y] discounted the speculative opinion textonym [*sic*] and *relied on the statutory presumption in rending the decision* to uphold the suspension. Again, even though the suspension has already been set aside based on the acquittal, *the DMV's reliance on the presumption was appropriate* and the petition should be denied." (Italics added.)[5]

In March 2020, Isenberg filed a reply stating that the acquittal and the DMV's subsequent order setting aside the suspension order did not moot her request for attorney fees.

*Superior Court's Decision*

On July 16, 2020, the superior court issued its written ruling denying Isenberg's petition for writ of mandate as moot, but granted the request for attorney fees pursuant to section 800. Because the DMV had vacated the suspension order, the court did not need to decide the main issue raised in the writ petition—that is, whether Isenberg's BAC was at or above 0.08 percent at the time of Isenberg's driving. Instead, the court focused on the remaining issue—the request for attorney fees and costs.

Based on principles set forth in *Coffey*, *supra*, 60 Cal.4th 1198, the superior court's analysis addressed a series of issues. First, the court determined the DMV had

---

[5]    The contents of the DMV's opposition—particularly, the words we italicized—show that, six months after the hearing officer issued the administrative decision, the DMV interpreted the administrative decision as (1) correctly concluding the presumption in Vehicle Code section 23152, subdivision (b) had not been rebutted by Dorrance's testimony and (2) appropriately relying on the presumption to find Isenberg drove with a prohibited BAC.

On appeal, the DMV abandoned this interpretation of the hearing officer's decision. Directly contradicting the interpretation it presented to the superior court, the DMV now acknowledges the presumption in Vehicle Code section 23152, subdivision (b) was rebutted and argues it did not actually rely on that presumption in upholding the suspension.

made the required prima facie showing and, as a result, the chemical test results were presumptively reliable and admissible. Second, the court determined Isenberg "thus had the burden to produce affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV." Third, the court rejected Isenberg's argument that the chemical tests had not been conducted in accordance with the applicable regulation. (See Cal. Code Regs., tit. 17, §§ 1221–1221.5 [requirements for breath alcohol testing].) Fourth, the court set forth the legal principle that the presumption in in Vehicle Code section 23152, subdivision (b) was rebuttable and affected the burden of producing evidence, not the burden of proof. Fifth, the court noted and rejected the DMV's contention that "Dorrance's opinion testimony was not substantial evidence" that Isenberg's BAC was below 0.08 percent when she drove. Sixth, the court concluded Dorrance's expert testimony had the effect of eliminating the presumption in Vehicle Code section 23152, subdivision (b) that Isenberg had a BAC at or above 0.08 percent at the time of her driving—in other words, the presumption disappeared and had no further effect. Seventh, the court concluded the "DMV thus had the burden of showing based on all the evidence at the APS hearing that [Isenberg's] BAC was 0.08% or more at the time she drove, without the benefit of the VC 23152(b) presumption."

The superior court interpreted the administrative decision and concluded the hearing officer impliedly held that Isenberg had the burden of proving her BAC was below 0.08 percent when she drove. The court also concluded (1) the hearing officer found that Isenberg drove with a BAC of 0.08 percent or more "in part, 'based on the lack of sufficient evidence to rebut the chemical test results' " and (2) this finding about Isenberg's BAC was "without an evidentiary basis." The contents of the court's decision are discussed in further detail in parts II.E. and II.F. of this opinion.

9.

In September 2020, the superior court entered a judgment denying the petition for writ of mandate and awarding Isenberg costs and attorney fees. The amount of costs and fees awarded were left blank.

Subsequently, Isenberg filed a memorandum of costs stating her total costs were $1,091.95 and filed a motion for attorney fees requesting $4,320. The DMV opposed her motion. On December 3, 2020, the superior court granted Isenberg's motion and awarded her fees of $3,640 based on its finding of 36.4 hours of attorney time reasonably incurred multiplied by the statutory rate of $100 per hour.[6] Later in December, the DMV filed a notice of appeal to challenge the award of costs and attorney fees.

## DISCUSSION

Section 800, subdivision (a) provides in part: "In any civil action to appeal or review the ... determination of any administrative proceeding under this code or under any other provision of state law, ... [where] it is shown that the ... determination ... was the result of *arbitrary or capricious* action or conduct *by* a public entity or *an officer* thereof in his or her capacity, the complainant if he or she *prevails* in the civil action *may* collect … reasonable attorney's fees, computed at one hundred dollars ($100) per hour, but not to exceed seven thousand five hundred dollars ($7,500) …." (Italics added.)

Initially, we note the use of "may" in the statute does not make an award of attorney fees under section 800 discretionary. If a complainant prevails and makes the showing prescribed by the statute, the complainant is entitled to collect attorney fees.

---

**6**    In comparison, the cost to the Court of Appeal, and thus taxpayers, of processing an ordinary civil appeal was conservatively estimated three decades ago at $5,908. (*Cohen v. General Motors Corp.* (1992) 2 Cal.App.4th 893, 897; see *Huschke v. Slater* (2008) 168 Cal.App.4th 1153, 1163.) In *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, the court referred to a cost analysis by the clerk's office of the Second District that estimated $8,500 as the cost of processing an appeal that results in an opinion. (*Id.* at p. 520.)

(*Plumbing etc. Employers Council v. Quillin* (1976) 64 Cal.App.3d 215, 224.) Accordingly, the main issues raised by the application of section 800 are whether Isenberg prevailed in the writ proceeding and whether the DMV's conduct was arbitrary or capricious.

I.      PREVAILING PARTY

A.      <u>Applicable Principles of Law</u>

" 'The definition of prevailing party is not uniform under California law, and many attorney fees statutes contain a technical definition applicable to the particular statutory scheme.' [Citation.]  Section 800 does not contain such a definition.  Courts have rejected reliance on the definitions of a prevailing party found in Code of Civil Procedure section 1032 (general cost statute) or Civil Code section 1717 (contractual attorney fees) to determine what constitutes a prevailing party." (*Zuehlsdorf v. Simi Valley Unified School Dist.* (2007) 148 Cal.App.4th 249, 257 (*Zuehlsdorf*).)

Lacking a statutory standard, courts have determined that a rigid definition of prevailing party should not be used. (*Zuehlsdorf*, *supra*, 148 Cal.App.4th at p. 257.) Instead, trial courts should determine prevailing party status by assessing whether a party prevailed on a practical level.  In making this practical assessment, the trial court must consider "the extent to which each party has realized its litigation objectives." (*Ibid.*) Appellate courts should affirm the trial court's determination absent an abuse of discretion. (*Ibid.*)

The term "prevailing party" used in section 800 is synonymous with the term "successful party" used in Code of Civil Procedure section 1021.5. (*Hall v. Department of Motor Vehicles* (2018) 26 Cal.App.5th 182, 193.)  Accordingly, cases addressing whether a litigant was a successful party for purposes of awarding attorney fees under Code of Civil Procedure section 1021.5 provide useful comparisons for determining whether a litigant prevailed under Government Code section 800.

11.

A request for attorney fees under Code of Civil Procedure section 1021.5 requires the court to undertake a pragmatic assessment in deciding whether a plaintiff was successful. (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685.) "The critical fact is the impact of the action, not the manner of its resolution." (*Ibid.*) Thus, "plaintiffs who obtain some of the benefit sought in their lawsuit may be considered the prevailing party even if the defendant ultimately obtains a dismissal." (1 Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2021) § 2.108, p. 2-127.) "The same principle applies to plaintiffs whose lawsuits are dismissed as moot because relief is obtained." (*Id.* at p. 2-129.) As described below, these principles about dismissed lawsuits apply to this writ proceeding and, as a result, the superior court did not abuse its discretion when it determined Isenberg prevailed.

B.     Cases Addressing the Realization of Litigation Objectives

In *Zuehlsdorf*, the parents of a high school student filed a petition for a writ of mandate and sought injunctive relief against their daughter's high school, school district, and an athletic league to enjoin them from preventing her from playing varsity soccer. (*Zuehlsdorf, supra,* 148 Cal.App.4th at p. 252.) The trial court granted a temporary restraining order and a preliminary injunction, enjoining the defendants from obstructing or interfering with the daughter's participation in the varsity soccer program. (*Id.* at p. 254.) As a result, the daughter was reinstated in the athletic program. (*Id.* at p 251.) Subsequently, the trial court denied the application for the permanent injunction as moot and awarded attorney fees and costs under section 800. (*Zuehlsdorf, supra,* at p. 254.)

The defendants in *Zuehlsdorf* appealed, contending the award of attorney fees and costs was improper because there was no final order or judgment on the merits and plaintiffs were not the prevailing parties. (*Zuehlsdorf, supra*, 148 Cal.App.4th at p. 256.) The appellate court referred to the parties' litigation objectives and determined the parents were "successful in [their] attempt to have [the daughter] reinstated in the

12.

program while appellants failed in their efforts to prevent her participation." (*Ibid.*) Thus, the appellate court concluded the trial court did not abuse its discretion in determining that the parents were the prevailing party entitled to attorney fees under section 800. (*Zuehlsdorf, supra,* at p. 258.)

In *Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583 (*Champir*), the trial court determined that, for purposes of an award of attorney fees under Civil Code section 5975, subdivision (c), the plaintiff homeowners were the prevailing party in a lawsuit against their homeowners' association. (*Champir*, at p. 586.) The plaintiffs filed the action to enforce recorded covenants, conditions, and restrictions (CC&Rs) of their planned development community relating to the installation of a traffic signal. (*Id.* at p. 587.) They obtained a temporary restraining order and subsequent preliminary injunction enjoining the construction of the traffic signal. (*Id.* at p. 588.) After issuance of the preliminary injunction, the homeowners' association obtained the consent of a majority of its members to the installation and related expenditure of funds. (*Id.* at p. 589.) As a result, the trial court dissolved the preliminary injunction and the plaintiffs voluntarily dismissed the action. (*Ibid.*) Each side then filed motions for attorney fees claiming to be the prevailing party. (*Ibid.*) The trial court awarded fees to the plaintiffs, and the homeowners' association appealed. (*Ibid.*)

Like Government Code section 800, Civil Code section 5975 does not define the term "prevailing party" and the determination focuses on who prevailed on a practical level by achieving its main litigation objectives. (See *Champir*, *supra*, 66 Cal.App.5th at p. 590.) The trial court applied this test and determined the plaintiffs' main objective was to require the homeowners' association to comply with the CC&Rs and by obtaining the preliminary injunction it compelled the association to obtain the written consent of a majority of its members before installing the traffic signal. (*Ibid.*) The appellate court concluded the trial court had not abused its discretion and rejected the argument that the association prevailed as a matter of law because it ultimately installed the traffic signal

13.

and incurred no monetary liability. (*Id.* at pp. 592–593.) Thus, *Champir* is another case illustrating that a plaintiff may be deemed a prevailing party when the dispute is resolved before a final adjudication of its merits and the lawsuit is dismissed.

C.    Isenberg Achieved Her Litigation Objectives

The petition for writ of mandate Isenberg filed in September 2019 requested two things. Her immediate goal was to obtain a stay of the suspension of her license pending adjudication of the writ petition. Her long-term goal was the issuance of a writ directing the DMV to revoke its order suspending her driver's license.

Isenberg achieved both objectives. First, on October 3, 2019, the superior court granted the stay. Second, on February 12, 2020, after Isenberg was acquitted by a criminal court, the DMV issued an order stating that its order of suspension was vacated and set aside pursuant to Vehicle Code section 13551.

We conclude the superior court did not abuse its discretion when it concluded Isenberg was the prevailing party for purposes of section 800 because Isenberg achieved both of her litigation objectives. The hearing officer's decision stated the suspension of Isenberg's driver's license would be reimposed effective September 6, 2019, and would remain in effect through January 5, 2020. This timeframe for the suspension demonstrates that, if Isenberg had not filed this writ proceeding, the suspension would have been fully served before her acquittal and the DMV's February 2020 set aside order. The stay prevented this from happening. Thus, the stay, like the preliminary injunctions issued in *Champir* and *Zuehlsdorf*, caused Isenberg to achieve her objective.

This practical achievement is not outweighed or negated by the fact that the superior court denied her petition as moot. (See *Champir*, *supra*, 66 Cal.App.5th at pp. 592–593; *Zuehlsdorf*, *supra*, 148 Cal.App.4th at p. 258.) Accordingly, the superior court reasonably determined Isenberg was the prevailing party for purposes of awarding attorney fees under section 800. Similarly, we conclude the court did not abuse the

14.

discretion granted by Code of Civil Procedure section 1032, subdivision (a)(4) in determining Isenberg was a prevailing party for purposes of awarding costs. (See generally, *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1338, fn. 4; *Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1197–1198 [situations in which the award of costs is within the court's discretion].)

Lastly, we address the DMV's argument that Isenberg's acquittal in a separate criminal case—a case in which the DMV had no role—enabled her to obtain, by operation of statute, her litigation objective and, as a result, Isenberg's writ petition played no role in her obtaining that relief. This myopic argument is unconvincing because it overlooks the practical impact of the stay, the fact the stay would not have been obtained without filing the writ petition, and the fact that the four-month suspension would have been served before Isenberg was acquitted on January 27, 2020.

## II.    ATTORNEY FEES BASED ON ARBITRARY CONDUCT

### A.    Definition of Arbitrary or Capricious

Section 800's phrase "arbitrary or capricious action or conduct" is not defined by statute. (See *Madonna v. County of San Luis Obispo* (1974) 39 Cal.App.3d 57, 61–62.) Our Supreme Court has concluded the phrase "encompasses conduct not supported by a fair or substantial reason [citation], a stubborn insistence on following unauthorized conduct [citation], or a bad faith legal dispute [citation]." (*Halaco Engineering Co. v. South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 79 (*Halaco*); see *Hall-Villareal v. City of Fresno* (2011) 196 Cal.App.4th 24, 35.) Attorney fees under section 800 may not be awarded simply because the actions of the administrative entity or its official were erroneous, even if clearly erroneous. (*Jones v. Goodman* (2020) 57 Cal.App.5th 521, 540; *Reis v. Biggs Unified School Dist.* (2005) 126 Cal.App.4th 809, 823.) Under these principles, unsubstantiated determinations (such as findings based on speculation or

15.

conjecture instead of sufficient evidence) can qualify as arbitrary conduct. (*Madonna*, *supra*, at p. 62.)

B.      Standards of Review

1.      *Abuse of Discretion*

The determination of whether conduct is arbitrary or capricious is essentially one of fact and is committed to the sound discretion of the superior court. (*Halaco*, *supra*, 42 Cal.3d at p. 79 [denial of attorney fees and award of costs upheld]; *Santos v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 551 [award of attorney fees upheld; abuse of discretion was not shown].) Accordingly, we apply the abuse of discretion standard of review to the superior court's finding that the DMV's conduct was arbitrary.

A reference to the abuse of discretion standard does not end an appellate court's inquiry into the standard of review because that standard is not unified. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) "[T]he deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Id*. at pp. 711–712, fns. omitted.)

2.      *Appellant's Burden of Showing Prejudicial Error*

In considering whether an abuse of discretion occurred in this case, we are bound by California's constitutional doctrine of reversible error. (See Cal. Const., art. VI, § 13.) Under that doctrine, an order of the lower court is presumed correct—that is, all intendments and presumptions are indulged to support the order on matters as to which the record is silent—and the appellant must affirmatively demonstrate both error and prejudice—that is a miscarriage of justice. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).) In civil matters, prejudice usually is established by showing a reasonable probability of a more favorable result absent the error. (*Soule v. General*

*Motors Corp.* (1994) 8 Cal.4th 548, 574; see Code Civ. Proc., § 475.) If this standard is not met, the error is regarded as harmless and reversal is not required.

### 3. *Standards Applicable to the Superior Court's Review*

As background for our analysis of the DMV's claims of superior court error, we note the standard of review the superior court would have applied to the hearing officer's decision if the suspension order had not been vacated and the superior court was required to decide the writ petition on its merits.

Vehicle Code section 13559, subdivision (a) authorizes superior courts to order the DMV to rescind a suspension order "[i]f the court finds that the department exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination which is not supported by the evidence in the record." The court's "review shall be on the record of the hearing and the court shall not consider other evidence." (*Ibid.*)

The suspension of an existing driver's license affects a vested, fundamental right for purposes of selecting the standard of judicial review applied by a superior court to the administrative decision to suspend the license. (*Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398.) Because a fundamental right is at stake, a superior court must exercise its independent judgment when reviewing the DMV's decision to suspend a driver's license. (*Munro v. Department of Motor Vehicles* (2018) 21 Cal.App.5th 41, 46; see Code Civ. Proc., § 1094.5, subd. (c) ["independent judgment on the evidence"].) Thus, the superior court makes its own findings of fact regarding the driver's BAC at the time of driving and, on appeal, that finding is reviewed under the substantial evidence standard. In other words, the superior court does not apply the substantial evidence standard to the administrative hearing officer's findings of fact. (Cf. Code of Civ. Proc., § 1094.5, subd. (b).)

17.

In comparison, when a superior court is considering a motion for attorney fees under section 800, it is not reviewing an earlier decision as to arbitrariness or capriciousness. As a result, the court sits as the initial trier of fact and exercises the discretionary authority granted by section 800 in determining whether the agency's conduct was arbitrary or capricious. (See *Halaco*, *supra*, 42 Cal.3d at p. 79.)

C.      DMV's Claims of Error

The DMV's opening appellate brief contends its decision was reasonable, not arbitrary or capricious. The DMV presents three arguments to support this contention. First, it contends the superior "court reached its threshold finding that the burdens of proof and evidence were wrongly applied by misreading the administrative decision." (Boldface omitted.) Second, it contends the "hearing officer properly determined that the chemical breath tests were admissible because" (boldface omitted) the tests complied with applicable regulations. Third, the DMV contends its "hearing officer correctly examined whether the preponderance of the evidence supported the suspension of Isenberg's driving privilege." (Boldface omitted.)

In response, Isenberg contends substantial evidence supports the superior court's finding of arbitrary conduct by the DMV and, furthermore, the court did not misread the APS decision. Isenberg argues the DMV "once again 'misapprehended' the three-hour presumption and relied entirely upon the presumption to suspend [Isenberg's] license." Isenberg's argument that the DMV did, in fact, rely on the presumption appears to be based the DMV's opposition to her writ petition, which asserted "the DMV's reliance on the presumption was appropriate."

D.      Admissibility of Chemical Test Results

We first consider the DMV's assertion that the hearing officer properly determined the chemical breath tests were admissible because the tests complied with applicable regulations. The superior court's decision reached the same conclusion,

finding the "chemical test results were presumptively reliable and admissible." The court's finding is consistent with the analysis set forth in *Coffey* and is favorable to the DMV. Thus, the DMV's assertion does not demonstrate the superior court erred. (See *Denham*, *supra*, 2 Cal.3d at p. 564 [appellant has burden of affirmatively demonstrating prejudicial error].) Instead, the assertion appears to have been included in the DMV's opening brief to provide background for the DMV's claims of subsequent error.

### E. Misreading the Hearing Officer's Decision

#### 1. Complicating Factors

Analyzing the DMV's contention that the superior court misread the hearing officer's decision is complicated by various factors, including the three levels of decision makers involved—namely, the hearing officer, the superior court, and now us. In these circumstances, we must interpret the superior court's decision to determine how it interpreted the hearing officer's decision. Then, we must separately interpret the hearing officer's decision and compare our interpretation of the hearing officer's decision to our interpretation of the superior court's interpretation of the hearing officer's decision to determine if, as claimed by the DMV, the superior court misread the administrative decision.

#### 2. Rules for Interpreting the Decisions

Here, we consider the rules of law that govern the interpretation of the superior court's decision and the hearing officer's decision. As described in part II.B.2., *ante*, the superior court's decision is presumed correct and all intendments and presumptions are indulged to support that decision order on matters as to which the record is silent. (*Denham*, *supra*, 2 Cal.3d at p. 564.) Furthermore, the meaning of a court order or judgment is determined under the same rules that apply to written documents generally. (*Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205; *Verner v. Verner* (1978) 77 Cal.App.3d 718, 724.) As to the rules of law that govern the interpretation of

19.

an administrative decision, we conclude an interpretation that seeks to identify the analytical route taken by the administrative agency is subject to the rules that apply to written documents generally.[7] This interpretative process is different from determining whether an agency's findings of fact have sufficient evidentiary support.

Under the general rules of interpretation, the threshold question in analyzing the meaning of the superior court's and the hearing officer's decisions is whether the language used is ambiguous. (E.g., *Joseph v. City of Atwater* (2022) 74 Cal.App.5th 974, 982 [the existence of ambiguity is the threshold question in contract interpretation]; *Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 336 [same for statutory interpretation].) When interpreting a public agency's decision (just as when interpreting a contract or statute), the term " 'ambiguous' refers to language that is susceptible to more than one reasonable interpretation." (*Arnaudo Brothers, L.P. v. Agricultural Labor Relations Board* (2018) 22 Cal.App.5th 1213, 1232.) Determining whether language can be reasonably interpreted in more than one way is a question of law subject to independent review. (*Joseph*, *supra*, at p. 982.)

When language in a written document is not ambiguous—that is, the language is reasonably susceptible to only one interpretation—the inquiry ends and the plain meaning of the written text controls. (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 390.) Alternatively, if the writing is ambiguous, the inquiry into meaning continues and the court must resolve the ambiguities. (*Ibid*.) The rules of law governing the resolution of ambiguity vary depending on whether extrinsic evidence is

---

[7] We reject Isenberg's contention that the APS hearing and the resulting written decision is subject to a provision in the bill of rights set forth in California's Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.). The bill of rights is found in article 6 (Gov. Code, §§ 11425.10 to 11425.60) of chapter 4.5 of the APA. APS hearings are subject to the requirements of Vehicle Code sections 14100 through 14106 and, to the extent gaps exist in those requirement, chapter 5 of the APA. (Veh. Code, § 14112, subd. (a).) Thus, chapter 4.5 of the APA, which includes the bill of rights, does not apply to APS hearings.

presented and whether the credibility of that evidence is disputed. "It is solely a judicial function to interpret a written contract unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn from uncontroverted evidence." (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439.) Here, we conclude extrinsic evidence relevant to the interpretation of the superior court's decision and the hearing officer's decision is included in the appellate record. The superior court's decision is not interpreted in a vacuum; instead, the contents of the clerk's transcript shows the issues and arguments presented to the court and establishes the context in which the decision was made. Similarly, the administrative record establishes the context for the hearing officer's decision.

Next, we consider whether the interpretation of the superior court's decision and the hearing officer's decision "turns upon the credibility of" the documents included in the clerk's transcript and administrative record. (*Garcia v. Truck Ins. Exchange*, *supra*, 36 Cal.3d at p. 439.) The parties do not dispute the contents of the clerk's transcript or the administrative record. Simply put, the record says what it says. The underlying disputes about the credibility of the evidence relating to Isenberg's BAC are not disputes relevant to interpreting the text of the written decisions. Consequently, applying the rules of law applicable to written documents generally, we conclude the interpretation of the superior court's decision and the hearing officer's decision poses questions of law subject to our independent determination. (See *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)

When independently resolving an ambiguity and choosing among the reasonable interpretations of the language used in the decisions, we adopt "the most reasonable interpretation." (*Global Modular, Inc. v. Kadena Pacific, Inc.* (2017) 15 Cal.App.5th 127, 138.) Stated another way, we adopt "the most natural reading of" the language in question, considering that language in context and the decision as a whole. (*Mountain*

21.

*Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 755 [interpretation of contract provision].)

### 3. Legal Principles Governing the Presumption

The first category of potential misreadings of the hearing officer's decision we consider involves the superior court's interpretation of the hearing officer's analysis and conclusions regarding the rebuttable presumption set forth in subdivision (b) of Vehicle Code section 23152. The legal foundation for this inquiry is established by the statutory text creating the presumption and the principles about the presumption set forth in *Coffey*, *supra*, 60 Cal.4th 1198. The last sentence in subdivision (b) of Vehicle Code section 23152 provides in full:

> "In any *prosecution* under this subdivision, it is a *rebuttable* presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test *within three hours after the driving*."[8]

The statute's use of the word "prosecution" was noted by the Supreme Court in *Coffey* and, like the parties, the court assumed an administrative proceeding was a prosecution and, thus, the three-hour presumption applied to the APS hearing. (*Coffey*, *supra*, 60 Cal.4th at pp. 1208–1209.)

The Supreme Court then explained how the three-hour presumption operates. (*Coffey*, *supra*, 60 Cal.4th at p. 1209.) The court stated that subdivision (b) of Vehicle Code section 23152, "by its terms, creates a rebuttable presumption" and that "it establishes a presumption affecting the burden of producing evidence, not the burden of proof." (*Ibid.*)[9] The court also stated that the three-hour presumption requires the trier of

---

[8]    For the remainder of this opinion, we refer to the rebuttable presumption set forth in subdivision (b) of Vehicle Code section 23152 as the "three-hour presumption."

[9]    This part of *Coffey* was explicitly set forth in the superior court's decision. The administrative decision referred to "the lack of sufficient evidence to rebut the chemical test results," which implies the hearing officer correctly regarded the presumption as

22.

fact, upon a showing of the preliminary fact (i.e., chemical test results that the driver had a BAC of 0.08 percent or more within three hours of driving) to assume the existence of the presumed fact (i.e., the driver had been driving with a prohibited BAC) unless the presumption was rebutted. (*Coffey*, *supra*, at p. 1209.)

The Supreme Court's explanation of how to rebut the three-hour presumption is important to the issues presented in this appeal. The court's explanation began by quoting Evidence Code section 604, which addresses the effect of a presumption affecting the burden of producing evidence. (*Coffey*, *supra*, 60 Cal.4th at pp. 1209– 1210.) Under that statute, the trier of fact must "assume the existence of the presumed fact unless and until evidence is introduced which *would support a finding of its nonexistence*, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and *without regard to the presumption*. Nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate." (Evid. Code, § 604, italics added.) In other words, "if evidence sufficient to negate the presumed fact is presented, the 'presumption disappears' [citation] and 'has no further effect' [citation], although 'inferences may nevertheless be drawn from the same circumstances that gave rise to the presumption in the first place' [citation]." (*Coffey*, *supra*, at p. 1210.) The key issue in applying these principles is whether "evidence sufficient to negate the presumed fact [wa]s presented." (*Ibid*.)

In *Coffey*, the driver addressed this key issue by arguing the testimony of her expert witness supplied evidence sufficient to rebut the presumption. (*Coffey*, *supra*, 60

---

rebuttable. However, the administrative decision does not describe the presumption as affecting the burden of producing evidence, instead of the burden of proof. We note this omission does not, by itself, establish the hearing officer misapplied the presumption. Similarly, the lack of any reference to *Coffey* in the administrative decision does not necessarily establish the principles stated in that opinion were misapplied by the hearing officer. Nonetheless, the hearing officer's error is plainly established by statements in the administrative decision that are discussed below.

Cal.4th at p. 1210.) The DMV argued the hearing officer's refusal to credit the testimony of Coffey's expert established that testimony was insubstantial and, accordingly, was insufficient to rebut the presumption. (*Ibid*.) After considering this argument, the Supreme Court stated, "The DMV misapprehends Evidence Code section 604." (*Ibid*.) The court construed the statute to mean that the presumption "will apply unless the driver presents evidence which, *if believed*, 'would support a finding of [the] nonexistence of' (Evid. Code, § 604) the presumed fact." (*Ibid*.) The court supported this statutory construction by quoting legislative history that described the presumption as " 'merely a preliminary assumption in the absence of contrary evidence, *i.e.*, evidence sufficient to sustain a finding of the nonexistence of the presumed fact.' " (*Ibid*.) Based on this view of the presumption, the court stated:

> "[W]e find [driver's expert's] testimony was sufficient to rebut the presumption that plaintiff's BAC was at least 0.08 percent at the time she was driving. [He] was qualified as an expert in the field and his testimony was clear and direct. If believed, his evidence would have justified a conclusion that plaintiff's BAC was rising at the time of her chemical tests and was thus quite possibly below the 0.08 percent threshold at the time she had been driving. As a consequence, the DMV was required to prove plaintiff's BAC at the time she was driving without resort to the statutory presumption." (*Coffey*, *supra*, at p. 1211.)

Thus, in *Coffey*, the Supreme Court treated the expert's testimony about a rising BAC level as sufficient evidence to rebut the presumption because, if believed, that testimony would have adequately supported a finding of fact that the driver's BAC was below 0.08 percent at the time of driving. (See *Coffey*, *supra*, 60 Cal.4th at p. 1209 [presumption "was rebutted in this case"].)

### 4. Superior Court's Interpretation

The superior court's decision addressed the hearing officer's analysis and conclusions regarding the rebuttable presumption by stating:

> "The respondent DMV found, inter alia, that, '[B]ased on the lack of sufficient evidence to rebut the chemical test results, it is hereby determined

24.

that [petitioner Isenberg] submitted to and completed a chemical test of her breath, with results of 0.10% B.A.C. at 02:15 AM on 8/5/18 and 0.10% B.A.C. at 02:17 AM on 8/5/18.' The respondent DMV's decision analyzed the expert testimony and determined the petitioner's expert's testimony was not convincing. The respondent DMV concluded, 'Based on the preceding it is determined that the preponderance of the evidence in this case supports that [Isenberg] was driving a motor vehicle at the time that the concentration of alcohol in her blood was at or above 0.08%.'

"It appears to this court that the respondent DMV erroneously presumed the petitioner had the burden of proving her BAC was below .08% at the time she drove."

Later in the superior court's decision, after discussing the proper application of the presumption in accordance with *Coffey*, the court concluded the presumption disappeared (i.e., had no further effect) and then stated:

"The respondent DMV hearing officer made his determination [about Isenberg's BAC at the time of driving], in part, 'based on the lack of sufficient evidence to rebut the chemical test results.' This statement misses the point. The test results at 2:15 a.m. and 2:17 a.m. were valid, but do not necessarily represent the BAC at the time of driving."

The superior court's last reference to the presumption is contained in the decision's final paragraph, which reads:

"Respondent DMV was not entitled to presume a particular BAC level at the time of driving, and had to affirmatively prove that fact. Respondent arbitrarily based its determination that [Isenberg] had a BAC at or above .08% at the time of driving, without an evidentiary basis for doing so."

We interpret the foregoing statements from the superior court's decision as addressing three questions about the hearing officer's analytical path. First, did the hearing officer conclude the three-hour presumption was rebutted? Second, did the hearing officer rely on the presumption in making his ultimate finding that Isenberg drove with a prohibited BAC? Third, did the hearing officer presume Isenberg had the burden of proof regarding her BAC?

On the threshold question of ambiguity, we conclude the superior court's statements resolving these three issues are not ambiguous. We conclude the superior

25.

court interpreted the administrative decision to mean (1) the hearing officer concluded the three-hour presumption had not been rebutted, (2) the hearing officer relied *in part* on the presumption in making his ultimate finding regarding Isenberg's BAC, and (3) the hearing officer impliedly determined Isenberg had the burden of proving her BAC was below 0.08 percent when she drove. The first two enumerated interpretations were identical to the interpretations presented to the superior court by the DMV. For instance, the DMV's opposition to the writ petition summarized the DMV's analysis of the three-hour presumption by stating that "the DMV reasonabl[y] discounted the speculative opinion [of Isenberg's expert] and relied on the statutory presumption in rendering the decision to uphold the suspension. Again, … the DMV's reliance on the presumption was appropriate."

### 5. *Rebuttal of the Presumption by Isenberg's Expert*

Our next step is to interpret the hearing officer's decision to determine whether the superior court correctly determined the hearing officer concluded the three-hour presumption was not rebutted by Isenberg's expert. The DMV's contention that the superior court misread the hearing officer's decision is undeveloped on this specific issue. Its appellate briefing mentions the hearing officer's phrase "lack of sufficient evidence to rebut the chemical test results" only once. During oral argument, counsel for the DMV argued the hearing officer's statement about the "lack of sufficient evidence to rebut the chemical test results" did not refer to the three-hour presumption, but referred to the presumption that the chemical tests were valid because they were performed by a public employee within the scope of the employee's official duty. (See Evid. Code, § 664 [official duty presumed to have been regularly performed].) The DMV supported its new interpretation by citing the discussion of the official duty presumption in *Coffey*, *supra*, 60 Cal.4th at page 1206.

In *Coffey*, the hearing officer determined the expert's conclusions were " 'insufficient to rebut the official duty presumption.' " (*Coffey*, *supra,* at p. 1206.) The Supreme Court took this statement as "a reference to the presumption the chemical test results were valid." (*Ibid.*) The court explained its interpretation in a footnote:

> "Applied in this context, 'Evidence Code section 664 creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of [Cal. Code Regs.] title 17. [Citations.] Test results from authorized laboratories, performed by public employees within the scope of their duties, are admissible under the public employee records exception to the hearsay rule. [Citations.] The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence. [Citation.] At this point, "faced with a report of chemical test results, the burden would be on the licensee to demonstrate that the test was not properly performed." ' " (*Coffey*, *supra*, at p. 1206, fn. 8.)

Our independent interpretation of the hearing officer's decision leads us to conclude the superior court correctly interpreted that decision as referring to the three-hour presumption, not the official duty presumption. In our view, the hearing officer's phrase "based on the lack of sufficient evidence to rebut the chemical test results" demonstrates the hearing officer determined the three-hour presumption had not been rebutted. Had he meant the rebuttable presumption in Evidence Code section 664, he would have used the phrasing of the hearing officer in *Coffey* about the expert's testimony being " 'insufficient to rebut the *official duty* presumption' " (*Coffey*, *supra*, 60 Cal.4th at p. 1206, italics added) or referred to the consequences of the failure to rebut that particular presumption, which are the tests being deemed to have been properly performed, valid and admissible. Instead, the hearing officer referred to the rebuttal of the test *results* and it is those results that are addressed by the three-hour presumption.

Furthermore, our independent interpretation of this aspect of the hearing officer's decision is the same as the interpretation adopted by the DMV six months after the hearing officer issued his decision. The contents of the DMV's opposition to the writ

27.

petition are described in detail earlier in this opinion. (See *ante*, fn. 5 and accompanying text.) There, the DMV argued Dorrance's testimony about rising BAC did not amount to substantial evidence, did not rebut the presumption, and, as a result, the DMV's reliance on the presumption was appropriate. Consequently, we conclude the superior court correctly interpreted the hearing officer's decision when it determined the hearing officer decided the three-hour presumption had not been rebutted. In short, the superior court adopted the same interpretation that the DMV had presented to the court. It would be harsh to conclude, like the dissent, that the superior court erred when it accepted the interpretation presented to it by the DMV, rather than anticipating and adopting the contradictory interpretation presented by the DMV for the first time on appeal.

In addition, the superior court correctly determined the hearing officer erred in concluding the presumption was not rebutted. In *Coffey*, the Supreme Court determined the driver's qualified expert's testimony "was sufficient to rebut the presumption that plaintiff's BAC was at least 0.08 percent at the time she was driving." (*Coffey*, *supra*, 60 Cal.4th at p. 1210.) In *Coffey*, the expert witness "testified that, in his opinion, the four chemical test results indicated plaintiff's BAC was rising at the time of the tests … [and] he further deduced that plaintiff's BAC was below the 0.08 percent threshold at the time she was driving." (*Coffey*, *supra*, at p. 1216.) Similarly, in this case, Dorrance considered four breath tests where each subsequent test showed a higher BAC level than the previous test. Based on the test results and other factors, Dorrance testified that Isenberg's BAC while driving was probably 0.06 percent and may have been as high as 0.07 percent. When comparing the expert testimony offered in *Coffey* and the testimony Dorrance gave in this case, the only reasonable conclusion is that Dorrance's testimony was sufficient to rebut the presumption. Indeed, the DMV has abandoned the objectively unreasonable argument presented in the superior court and conceded that the three-hour presumption was rebutted.

28.

To summarize, the majority, the dissent, the superior court, the DMV, and Isenberg all now agree the three-hour presumption was rebutted. On a disputed point, we interpret the hearing officer's decision as determining the three-hour presumption had not been rebutted. We, like the superior court, conclude the hearing officer's determination that the presumption was not rebutted constituted error.[10]

###### 6. *Reliance on the Presumption by Hearing Officer*

Next, we interpret the hearing officer's decision to determine whether the superior court correctly determined the hearing officer relied *in part* on the presumption in making his ultimate finding that Isenberg's BAC was at or above 0.08 percent. The DMV contends the superior court erred because, under a proper interpretation of the administrative decision, the hearing officer actually reviewed the totality of the circumstances and determined the preponderance of the evidence indicated that Isenberg drove with a prohibited BAC. This contention implies that, contrary to the superior court's interpretation, the hearing officer did not rely *in part* on the presumption in finding Isenberg's BAC was at or above 0.08 percent.

The DMV's textual analysis of the hearing officer's decision assert the decision "expressly held that 'the preponderance of the evidence in this case supports that [Isenberg] was driving a motor vehicle at the time that the concentration of alcohol in her blood was at or above 0.08%.'" The DMV rephrases its interpretation of the administrative decision's contents by contending the decision states "that '[b]ased on the preceding' findings of fact, 'the preponderance of the evidence in this case supports that'"

---

**10**    While the dissent agrees the three-hour presumption was rebutted, it interprets the hearing officer decision differently and concludes the hearing officer decided the three-hour presumption was rebutted. This interpretation leads the dissent to conclude the hearing officer did not rely on the presumption to find Isenberg drove with a prohibited BAC. The disagreement between the majority and dissent on these two points explains why the majority concludes the DMV's conduct was arbitrary and the dissent concludes the DMV's conduct was not erroneous, much less arbitrary.

Isenberg drove with a BAC level of 0.08% or more." As a practical matter, the DMV contends that, despite the hearing officer's determination that the presumption had not been rebutted, the presumption had no effect on the hearing officer's subsequent analysis of Isenberg's BAC while driving.

Our textual analysis of the hearing officer's decision begins with the sentence quoted by the DMV, which reads in full: "Based on the preceding it is determined that the preponderance of the evidence in this case supports that [Isenberg] was driving a motor vehicle at the time that the concentration of alcohol in her blood was at or above 0.08%." Thus, the DMV's first rendition of the sentence is inaccurate because it omits the opening words "[b]ased on the preceding it is determined that." The second version inaccurately narrows the sentence by inserting the limitation "findings of fact" immediately after "[b]ased on the preceding." In effect, the DMV now interprets "the preceding"—which was the basis for the hearing officer's BAC finding—to exclude the three-hour presumption.

On the threshold question of ambiguity, we assume for purposes of this appeal that the hearing officer's decision was ambiguous as to whether his finding about Isenberg's BAC at the time of driving relied or did not rely on the presumption. The superior court resolved that ambiguity by reading the hearing officer's phrase "[b]ased on the preceding it is determined that" to mean the hearing officer made the finding that Isenberg's BAC was at or above 0.08 percent while driving, *in part*, based on his determination that the presumption had not been rebutted.

We conclude the superior court adopted the more likely interpretation of the administrative decision's phrase "[b]ased on the preceding it is determined that" because the hearing officer's conclusion that the presumption was not rebutted was part of the hearing officer's analysis that *preceded* the finding about Isenberg's BAC at the time of driving. This inference is not directly contradicted by the administrative decision, which includes no language indicating the presumption was not relied upon by the hearing

30.

officer. For instance, the decision does not state that the presumption disappeared or that it had no effect on the weighing of the evidence presented. Furthermore, the DMV has presented no argument explaining why the hearing officer would expressly conclude a presumption has not been rebutted and then ignore the effect of the unrebutted presumption in his subsequent analysis. Also, the hearing officer's reference to "the preponderance of the evidence in this case" does not demonstrate his analysis of the evidence was unaffected by the presumption. Therefore, we conclude the superior court did not misread the hearing officer's decision in concluding the hearing officer's determination that Isenberg drove with a prohibited BAC was based *in part* on the presumption.

Furthermore, our interpretation of the hearing officer's decision as relying on the three-hour presumption is confirmed by the interpretation the DMV presented to the superior court. The DMV's opposition to Isenberg's writ petition plainly stated that "the DMV's reliance on the presumption was appropriate."

The last step in our analysis of the hearing officer's reliance of the three-hour presumption addresses whether that reliance was error. We conclude the superior court correctly determined the hearing officer committed legal error in relying in part on the presumption. *Coffey* clearly establishes that "if evidence sufficient to negate the presumed fact is presented, the 'presumption disappears' [citation] and 'has no further effect' [citation]." (*Coffey*, *supra*, 60 Cal.4th at p. 1210.) The hearing officer's partial reliance on the presumption is a clear violation of this principle.

### 7. *Placing the Burden of Proof on Isenberg*

We also must interpret the hearing officer's decision to determine whether the superior court was correct in stating: "It appears to this court that the respondent DMV erroneously presumed [Isenberg] had the burden [of] proving her BAC was below 0.08% at the time she drove." The DMV contends this interpretation is wrong because it did not

presume Isenberg had the burden to prove her BAC level was below 0.08 percent when she drove.

The hearing officer's decision makes no reference to the burden of proof and, thus, does not explicitly identify which side had the burden. Therefore, the superior court's interpretation was based on an inference drawn from the hearing officer's conclusion that the presumption had not been rebutted and, perhaps, the hearing officer's partial reliance on the presumption. A conclusion by the hearing officer that the burden *of proof* was on Isenberg would have violated principles set forth in *Coffey*, which stated the presumption affected the burden of producing evidence, not the burden of proof. Based on our independent interpretation of the hearing officer's decision as a whole, we conclude the most likely interpretation is that the hearing officer treated the DMV has having the burden of proof, but allowed the presumption to assist the DMV in carrying that burden. Accordingly, we conclude the superior court did not correctly interpret the hearing officer's decision when it concluded the hearing officer presumed Isenberg had the burden of proof regarding her BAC.

Having decided that the superior court correctly identified the hearing officer's analytical path on two points and incorrectly on a third point, we turn to the question about the sufficiency of the evidence to support the hearing officer's ultimate finding of fact regarding Isenberg's BAC.

F.      Evidentiary Support for Hearing Officer's BAC Finding

The last sentence of the superior court's decision addressed the evidence supporting the finding that Isenberg's BAC while driving was at least 0.08 percent. The sentence stated that the DMV "arbitrarily based its determination that [Isenberg] had a BAC at or above .08% at the time of driving, *without an evidentiary basis for doing so*." (Italics added.) The DMV's opening brief impliedly challenges the inclusion of the phrase "without an evidentiary basis for doing so" by arguing that the hearing officer

correctly examined whether the preponderance of the evidence supported the suspension of Isenberg's driving privilege. In other words, we interpret the DMV's contention as challenging both the superior court's determination that the hearing officer relied *in part* on the presumption in making his ultimate finding of fact and the superior court's statement that there was no evidentiary basis for the finding.

As before, our first step is to interpret the superior court's decision. Besides using the phrase "without an evidentiary basis for doing so," the court stated that "it appears this court must independently judge the evidence to assess whether the respondent DMV acted in an arbitrary or capricious manner in suspending her license." We note that if the court had been considering the merits of the petition for writ of mandate and determining whether to uphold the suspension order, it would have been required to exercise its "independent judgment on the evidence." (Code Civ. Proc., § 1094.5, subd. (c); see *Munro v. Department of Motor Vehicles*, *supra*, 21 Cal.App.5th at p. 46.) However, in the context of a motion for attorney fees under section 800, the court sits as a trier of fact on the question of arbitrary or capricious conduct. That role does not require the court to independently judge the evidence underlying the hearing officer's finding about the driver's BAC. Instead, it must determine whether the hearing officer's finding was " 'supported by a fair or substantial reason' " (*Halaco*, *supra*, 42 Cal.3d at p. 79), which we interpret as including substantial evidence, rather than speculation or conjecture, to support the finding.

Here, the superior court's statement that it "must independently judge the evidence to assess whether the respondent DMV acted" arbitrarily is ambiguous. It could mean the court determined it was required to independently judge the evidence to determine *Isenberg's BAC at the time of driving*. Alternatively, it could mean the court was required to independently judge only the evidence relevant to *arbitrary conduct by the DMV*. (See *Halaco*, *supra*, 42 Cal.3d at p. 79 [whether conduct is arbitrary or capricious is essentially a question of fact committed to the sound discretion of the superior court].)

33.

If the superior court meant the first interpretation, it committed an error of law. Alternatively, if it meant the second interpretation, it correctly identified the applicable rule of law.

Resolving this ambiguity is not necessary because, under either interpretation, the superior court committed error. First, if the court concluded it was to independently judge the evidence pertaining to Isenberg's BAC while driving, the court would have applied the wrong legal standard in assessing Isenberg's claim to attorney fees under section 800. Second, if the court considered whether the legal question of whether substantial evidence supported the hearing officers finding of fact and concluded there was insufficient evidence, that determination would have been error. (See *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188 [existence or nonexistence of substantial evidence is a question of law].)

In *Coffey*, the Supreme Court discussed the circumstantial, nontest evidence of the driver's intoxication and "concluded substantial evidence supported the trial court's decision to deny writ relief." (*Coffey*, *supra*, 60 Cal.4th at p. 1217.) As a result, the suspension order was upheld. (*Ibid*.) Here, the DMV contends that there is an adequate evidentiary basis, albeit circumstantial, for finding Isenberg's BAC was 0.08 percent or more when she drove. That circumstantial evidence included the two chemical breath tests taken less than an hour after Isenberg was stopped. Those tests showed a BAC of 0.100 and 0.101 percent. Other circumstantial evidence included Isenberg's weaving and tailgating immediately before being pulled over, the smell of alcohol in her vehicle, her red and watery eyes, her admission that she consumed beer prior to driving, and her failure of the field sobriety tests. Based on *Coffey*, we conclude Isenberg's test results and the other circumstantial evidence would constitute substantial evidence to support a finding that Isenberg drove with a prohibited BAC. Our resolution of this legal question, however, does not establish all aspects of the conduct of the DMV and its hearing officer were reasonable rather than arbitrary.

G.      Summary of the Two Decisions and Their Respective Errors

Our interpretation of the superior court's decision and the hearing officer's decision is summarized as follows. The superior court correctly interpreted the hearing officer's decision as concluding the presumption had not been rebutted and as relying in part on the presumption in finding Isenberg's BAC was at least 0.08 percent when she was driving. Both of these steps in the hearing officer's analytical path constitute legal error.

The superior court incorrectly interpreted the hearing officer's decision when it stated the hearing officer erroneously presumed Isenberg had the burden of proving her BAC was below 0.08 percent at the time she drove. In addition, the superior court committed error in stating the hearing officer found that Isenberg had a prohibited BAC was "without an evidentiary basis for doing so."

H.      Arbitrary Conduct

Before addressing whether the superior court's errors were prejudicial or harmless and, if prejudicial, the appropriate type of appellate relief, we consider whether the DMV's conduct qualifies as arbitrary or capricious conduct for purposes of section 800. The DMV's conduct includes, but is not limited to, the hearing officer's errors in concluding that the presumption had not been rebutted and in relying on the presumption. As described earlier, not every error by the DMV or one of its officers, even clear error, is arbitrary or capricious. (*Jones v. Goodman*, *supra*, 57 Cal.App.5th at p. 540.)

The DMV's appellate briefing did not directly acknowledge the hearing officer committed legal error in concluding the three-hour presumption was not rebutted and, furthermore, incorrectly argued (by implication) that the hearing officer did not rely on the presumption in making his ultimate finding regarding Isenberg's BAC while driving. (See fn. 4, *ante*.) As a result, the DMV's appellate briefing does not reach the issue of whether the superior court abused its discretion in finding these specific hearing officer errors constituted arbitrary conduct. Nonetheless, we proceed with our review and

35.

examine whether the superior court prejudicially abused its discretion in finding the DMV's conduct was arbitrary.

One type of arbitrary or capricious conduct recognized by California courts is " 'a stubborn insistence on following unauthorized conduct.' " (*Halaco*, *supra*, 42 Cal.3d at p. 79.) Here, the superior court impliedly found the DMV was stubborn in its misapplication of the three-hour presumption more than four years after the Supreme Court set forth the proper treatment of that presumption and the role of expert testimony in rebutting the presumption. The principles governing the presumption set forth in *Coffey* are not complex or obscure, rather they are straightforward and relatively simple to apply. Therefore, the superior court reasonably could conclude that the hearing officer stubbornly followed line of reasoning that was contrary to *Coffey*. Furthermore, the DMV's approach during this lawsuit provides additional support for the inference that the DMV was being stubborn. For instance, the superior court's decision noted the DMV contention that Dorrance's opinion testimony was not substantial evidence and correctly rejected this contention as contrary to *Coffey*. Only in response to a question at oral argument before this court did the DMV explicitly concede the three-hour presumption had been rebutted—a point which is obvious under the analysis set forth in *Coffey* and should have been adopted before the superior court.[11] Accordingly, we cannot conclude the superior court abused its discretion when it impliedly found the DMV was stubborn and thus arbitrary in its misapplication of the presumption. (See generally, *Santos v. Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 551 [award of attorney fees under § 800 affirmed, no abuse of discretion shown].)

---

[11] We conclude the DMV's conduct *after* the administrative proceeding could be viewed by the superior court as circumstantial evidence that supports an inference as to its state of mind during the administrative proceeding. (See *People v. Shelton* (2006) 37 Cal.4th 759, 767 [subsequent conduct of parties is relevant extrinsic evidence of their mutual intention at the time of contracting].)

I.    Prejudicial Error

Next, we consider whether the two superior court errors were prejudicial or harmless. California's doctrine of reversible error requires the appellant demonstrate both error and a miscarriage of justice—that is, prejudice. (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1051.) In civil cases, an error is prejudicial if there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached. (*Ibid*.; see Code Civ. Proc., § 475.)

Section 800 authorizes an award of attorney fees if "the award, finding or other determination of [the] administrative proceeding … was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof." Here, the arbitrary conduct includes the "determination" by the hearing officer that the presumption was not rebutted. In addition, the hearing officer's "finding" that Isenberg drove with a prohibited BAC was a result of arbitrary conduct by the hearing officer—namely, his partial reliance on the presumption to support that finding.

The superior court erroneously determined the DMV's conduct was arbitrary on two additional points. Under our interpretation of the hearing officer's decision, we concluded the DMV did not presume Isenberg had the burden of proof. Also, we concluded the chemical test results and circumstantial evidence of intoxication constituted substantial evidence to support a finding that Isenberg drove with a prohibited BAC. The test for prejudice requires us to determine whether there is a reasonable probability that the superior court would deny the request for attorney fees if we remanded and directed it to exercise its discretionary authority and decide the motion based solely on the arbitrary conduct involving the erroneous determination that the presumption had not been rebutted and the erroneous reliance in part on the presumption to find that Isenberg drove with a prohibited BAC.

We conclude the DMV has not demonstrated a more favorable outcome is reasonably probable. Based on the record before this court, it appears the superior court

37.

would again award attorney fees based on the DMV's arbitrary determination that the presumption had not been rebutted and its arbitrary partial reliance on the presumption to find Isenberg's BAC was at or above 0.08 percent when she drove. As a result, the two superior court errors were harmless.

## III.   ATTORNEY FEES ON APPEAL

Isenberg contends she is entitled to additional attorney fees incurred in this appeal. She requests we remand this matter to the superior court for a decision as to the amount, not to exceed $3,860. An award of $3,860, when added to the previous award of $3,640, would bring her a total award to $7,500, which is the maximum authorized by section 800. (See *Reeves v. City of Burbank* (1979) 94 Cal.App.3d 770, 780 [statutory limit applies to one civil action, which includes any appeal].)

In *Serrano v. Unruh* (1982) 32 Cal.3d 621, the court stated that "it is established that fees, if recoverable at all—pursuant either to statute or parties' agreement—are available for services at trial and on appeal." (*Id*. at p. 637.) Furthermore, "[c]ourts routinely have awarded fees on appeals vindicating only the right to an award for trial services." (*Ibid*.) We conclude these principles apply to an award of attorney fees under section 800. Thus, Isenberg is entitled to the attorney fees incurred in this appeal, subject to the statutory limit. As requested by Isenberg, we will adhere to the practice of remanding to the superior court to determine the appropriate amount of such fees. (See *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1610 [better practice is to remand].)

## DISPOSITION

The judgment is affirmed. Respondent is awarded her costs and attorney fees on appeal. (Cal. Rules of Court, 8.278(a)(1), (d)(2).) The matter is remanded to the superior court with directions to determine, upon motion, the amount of attorney fees respondent

reasonably incurred in defending this appeal and in obtaining an award of those appellate fees in the superior court.

FRANSON, J.

I CONCUR:

SMITH, J.

Poochigian, Acting P. J., dissenting,

Petitioner is only entitled to attorney fees if it is shown the Department of Motor Vehicle's (DMV) determination "was the result of arbitrary or capricious action or conduct." (Gov. Code, § 800, subd. (a).)  The superior court held the hearing officer acted arbitrarily and capriciously when he found petitioner had been driving with a prohibited blood-alcohol content (BAC).  Applying a largely deferential standard of review, the majority affirms that decision.[1]  I respectfully dissent.

The majority homes in on the following statement in the hearing officer's decision:  "As based on the lack of sufficient evidence to rebut the chemical test results, it is hereby determined that [petitioner] submitted to and completed a chemical test of her breath, with results of 0.10 % B.A.C. at 2:15 AM on 8/5/18 and 0.10 % at 2:17 AM on 8/5/18."  The majority says this statement "demonstrates the hearing officer determined the three-hour presumption [in Veh. Code,§ 23152[2]] had not been rebutted." (Maj. opn., *ante*, at p. 27.)  I disagree.

The beginning of the sentence in dispute refers to a lack of sufficient evidence. The question is:  What determination was the hearing officer predicating on that lack of evidence?  If the purported lack of evidence was being relied upon to conclude the presumption in section 23152 had not been rebutted, the hearing officer erred.  If, however, the lack of evidence was being cited as a reason for accepting a factual inference raised by other evidence, the hearing officer did not err.

---

[1] Preliminarily,  I question whether the superior court's finding is entitled to deference here, since the evidence material to the question of capriciousness is in the administrative record rather than testimony in the superior court. (See *Stirling v. Agricultural Labor Relations Bd.* (1987) 189 Cal.App.3d 1305, 1312.)  It seems we are equally well-positioned to evaluate the administrative record.  In any event, the superior court's conclusion is reversible under any standard as explained herein.

[2] All subsequent statutory references are to the Vehicle Code unless otherwise noted.

The majority focuses on the beginning of the sentence (i.e., " 'based on the lack of sufficient evidence to rebut the chemical test results' ") to try to infer the hearing officer's purpose in citing the lack of sufficient evidence. (Maj. opn., *ante*, at pp. 27–28.) But we do not need to guess and extrapolate from the first half of the sentence because the rest of the sentence tells us directly: "As based on the lack of sufficient evidence to rebut the chemical test results, *it is hereby determined that [petitioner] submitted to and completed a chemical test of her breath, with results of 0.10 % B.A.C. at 2:15 AM on 8/5/18 and 0.10 % at 2:17 AM on 8/5/18*." (Italics added.) The hearing officer was citing the lack of rebuttal evidence to make a factual determination that petitioner completed two chemical tests of her breath at 2:15 a.m. and 2:17 a.m. with results of 0.10 percent both times.[3] Nothing more. The hearing officer was observing that petitioner failed to rebut the *evidence* that chemical tests were administered and yielded valid results of 0.10 percent, not that petitioner failed to rebut the *presumption* in section 23152.[4]

If the hearing officer's reasoning was as the majority describes it, his decision should have ended there. Instead, it proceeds to consider other evidence. Moreover, the alternative interpretation advanced by the majority is contrary to the plain words of the

---

[3] Most likely, the hearing officer included this as a rejection of petitioner's claims of irregularity surrounding the administration of the chemical tests. At the administrative hearing, petitioner's counsel argued that the tests were not performed in accordance with regulatory requirements and were therefore invalid. He adduced testimony indicating the arresting officer failed to observe petitioner for 15 continuous minutes before administering the test. (See Cal. Code Regs., tit. 17, § 1221.1(b)(1).)

[4] To rebut something simply means to counter it by evidence, argument, or contrary proof. (Black's Law Dict. (11th ed. 2019).) For example, a presumption can be rebutted when a party introduces evidence which would support an inference contrary to the presumption. (Evid. Code, § 604.)

Evidence can also be rebutted. (See, e.g., Evid. Code, §§ 1106, subd. (d); 1103, subd. (a)(2) & (c)(4); 1102, subd. (b).) That is, one party's evidence can be countered by another party's "contrary proof." (Black's Law Dict. (11th ed. 2019).)

Here, the hearing officer was saying that petitioner failed to rebut *evidence* (i.e., "the chemical test results"), not the *presumption* she was driving with a prohibited BAC.

decision and would have us conclude the DMV hearing officer knowingly refused to apply a seminal, directly controlling Supreme Court case squarely in his field of practice. We should be hesitant to reach such a conclusion when the record lends itself so easily to an innocent explanation. And we should be concerned about the effects of inferring an intent to obstinately refuse to follow the law under the circumstances of this case.

*Hearing Officer's Reliance, in Part, on Chemical Breath Tests was not Error, nor was it Arbitrary or Capricious*

With this understanding, it is clear the hearing officer committed no error at all, much less an arbitrary and capricious one. His decision later states that the ultimate finding against petitioner was "based on the preceding" – which would include the finding regarding the chemical breath tests. But the hearing officer was well within his authority as trier of fact to consider the valid chemical breath tests in finding it more likely than not petitioner was driving with a BAC of 0.08 percent or higher.

Rebuttable presumptions require a trier of fact to find the existence of a presumed fact upon the showing of a preliminary fact, absent evidence to the contrary. (*Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1209 (*Coffey*).) Once evidence is introduced that supports an inference that the presumed fact is untrue, the presumption disappears and has no further effect. (*Id.* at pp. 1209–1210.) In other words, the finder of fact proceeds as if there had never been a presumption. This means the trier of fact *may still draw inferences from the same circumstances that gave rise to the presumption* in the first place. (*Id.* at p. 1210.)

A hypothetical helps illustrate. " '[I]f a party proves that a letter was mailed, the trier of fact is required to find that the letter was received in the absence of any believable contrary evidence. However, if the adverse party denies receipt, the presumption is gone from the case. The trier of fact must then weigh the denial of receipt against *the inference of receipt arising from proof of mailing* and decide whether or not the letter was received.' " (*Coffey*, *supra*, 60 Cal.4th at p. 1210, italics added.)

3.

The important takeaway is that even after the presumption has been rebutted, the trier of fact may – after considering all of the evidence – base its finding on the original inference embodied in the presumption. In so doing, the factfinder is not applying the presumption at all, but instead making an independent inference from the evidence that happens to mirror the now-inapplicable presumption.

The presumption set forth in section 23152 operates the same way. Specifically, the DMV hearing officer was *required* to find petitioner had been driving with a prohibited BAC (i.e., presumed fact) upon a showing that she tested at a BAC of 0.08 percent or more within three hours of driving (i.e., preliminary fact) *unless* she introduced evidence that she had not been driving with a prohibited BAC (i.e., rebutting the presumption.) (See *Coffey*, *supra*, 60 Cal.4th at pp. 1209–1210.) Here, petitioner did introduce such evidence in the form of expert testimony concerning rising BAC. Because petitioner rebutted the presumption, the hearing officer was no longer *required* to infer from the test results that she had been driving with a prohibited BAC, but he was still *permitted* to do so.

Just as the hypothetical trier of fact could reject an addressee's denial of receipt of a letter and instead accept the ordinary inference of receipt arising from the proof of mailing, the hearing officer here was entitled to reject petitioner's expert's testimony and instead accept the ordinary inference of having driven with a prohibited BAC that arises from elevated results from chemical tests taken shortly after driving.

Thus, the fact that the hearing officer based his decision, in part, on the test results was entirely proper, and not arbitrary or capricious.

### *Superior Court Erred in Concluding Hearing Officer's Decision Lacked Evidentiary Basis*

The superior court concluded the DMV determined petitioner had a BAC at or above 0.08 percent at the time of driving, "without an evidentiary basis." Not so. (See Maj. opn., *ante*, at pp. 34–35.) To the contrary, the hearing officer had a strong

4.

evidentiary basis for finding by a preponderance of the evidence that petitioner was driving with a BAC of 0.08 percent or more at the time of driving, including: (1) petitioner was pulled over after weaving multiple times; (2) petitioner had a "strong odor" of alcohol from her person and her breath; (3) petitioner's eyes were red and watery; (4) petitioner was unable to perform field sobriety tests as explained and demonstrated by the officer; (5) a PAS test indicated her BAC was 0.091 percent, 16 minutes after she was stopped; (6) a PAS test indicated her BAC was 0.097 percent, 19 minutes after she was stopped; (7) a chemical breath test indicated her BAC was 0.10 percent, 35 minutes after she was stopped; and (8) a chemical breath test indicated her BAC was 0.10 percent, 37 minutes after she was stopped.

*Conclusion*

Because the superior court erroneously found the hearing officer acted in an arbitrary and capricious manner, I would reverse the award of attorney fees. For these reasons, I respectfully dissent.


POOCHIGIAN, Acting P. J.


5.